**BROOKHAVEN HOUSING COALITION et al., Plaintiffs,**

v.

**Robert L. KUNZIG, Administrator, General Services Administration, et al., Defendants.**

**No. 71–C–1001.**

United States District Court,
E. D. New York.

April 19, 1972.

diSuvero, Meyers, Oberman & Steel, New York City by Lewis M. Steel, New York City, of counsel, Richard F. Bellman, Nat'l Committee Against Discrimination in Housing, Inc., New York City, for plaintiffs.

Robert A. Morse, U. S. Atty., E.D.N. Y., Brooklyn, N. Y., for defendants by James D. Porter, Jr., Paul E. Warburgh, Jr., Asst. U. S. Attys., of counsel.

JUDD, District Judge.

## MEMORANDUM AND TEMPORARY INJUNCTION ORDER

Plaintiffs have moved for a preliminary injunction against (a) the occupancy by General Services Administration (GSA) or the Internal Revenue Service (IRS) of a new building being constructed in the Town of Brookhaven, and (b) the disposal by GSA of surplus housing facilities at Suffolk Air Force Base (AFB).

### The Papers

The action is brought by organizations interested in civil rights and civic affairs and by individual residents of the Town of Brookhaven, who complain

that adequate housing for low income and minority groups is not available in the Town of Brookhaven and that General Services Administration should have obtained assurance of the provision of adequate housing before locating a substantial federal installation in that town. The installation, a new processing center for the Internal Revenue Service, is nearing completion on land leased from the Town of Brookhaven to GSA.

Plaintiffs rely on an Executive Order issued by the President of the United States which requires that consideration be given, in the selection of sites for federal facilities, to the impact of the new facility on the community, and that GSA obtain advice from the Departments of Housing and Urban Development (HUD), Health, Education and Welfare, and Commerce. Executive Order No. 11512, quoted below. Without apparently obtaining any formal advice, GSA has relied on a 1967 survey of housing in Suffolk County, prepared by the Federal Housing Administration, and on assurances by the Town of Brookhaven that it will in the near future construct low income housing units for approximately 431 families.

The moving papers recite that the population of Brookhaven increased by 121 percent between 1960 and 1970, that 3,000 housing units are deteriorated or dilapidated, that 16 percent of all housing units are sub-standard, and that there is a current need for 4,000 new housing units for low income persons, with the result that the Suffolk County Welfare Department is forced to place families in motels at costs as high as $1,200 per month. The vacancy rate for rental property in Suffolk County is stated to be 0.6 percent.

Plaintiffs assert that the proposed housing development relied on by GSA has not been started, has not yet received tax abatement or permission to include federal rent supplement payments for some of its units, that it is located in a minority group community, where it will not promote racial integra-

tion, and that it will contain an inadequate number of three-bedroom units for large low-income families.

The IRS facility is expected to employ about 4,000 people, many on a part-time or seasonal basis, which may mean that staff will come from lower-income categories. In fact, starting salaries of 75 percent of the personnel are stated to be $7,319 per year or lower.

Plaintiffs assert that there is a pattern of racial discrimination in the housing market in Brookhaven.

Federally-financed housing units are now available in the Town of Southampton, about 25 miles from the IRS facility, and close enough to provide housing for IRS employees. The IRS facility is on a four-lane highway. After the determination to locate the IRS facility in Brookhaven, these housing units, at Suffolk Air Force Base, were declared surplus by GSA. Plaintiffs assert that a major part of those units have three or more bedrooms, and are suitable for low income families, but that GSA, without waiting for the construction of Brookhaven's proposed low-income units, plans to convey the AFB units to a public agency of the Town of Southampton. Moreover, according to plaintiffs, GSA has required no assurance that the needs of low-income and minority residents will be met in the future use of these units, or that minority groups will be given representation in the management of the property.

A housing development corporation funded by the Office of Economic Opportunity, known as HoMeS, Inc., has expressed its interest in assisting to utilize the AFB units in a manner consistent with plaintiffs' aims. Plaintiffs specifically request that GSA be directed to consider a proposal by HoMeS, Inc.

Defendants point out that the AFB units are not yet paid for, being subject to a mortgage owed by a government owned corporation to the Harlem Savings Bank. The sale proposed by GSA will realize approximately $1,500,000,

and permit partial payment of the mortgage balance of over $2,000,000. At oral argument, defendants' counsel stated that the Southampton proposal for the AFB units would shortly be submitted to a Congressional subcommittee for consideration.

The Executive Order was issued on February 27, 1970, and was implemented in late 1971 by a Memorandum of Understanding between HUD and GSA. This Memorandum of Understanding stated that advice from regional offices of HUD would "constitute the principal basis for GSA's consideration of the availability of such housing," and that if HUD reported that low-income housing on a non-discriminatory basis was inadequate, the two agencies would develop "an affirmative action plan" to insure that such housing would be available within six months after the occupancy of any facility.

The IRS facility is already occupied by advance members of the staff, who are engaged in recruiting personnel for a July 1, 1972 opening date. The construction cost is in the range of $25,000,000.

Unemployment in Suffolk County as a whole now approaches nine percent.

### Discussion

The Executive Order mentioned above provides:

Sec. 2. (a) The Administrator, and the heads of executive agencies, shall be guided by the following policies for the acquisition, assignment, reassignment, and utilization of office buildings and space in the United States:

(1) Material consideration shall be given to the efficient performance of the missions and programs of the executive agencies and the nature and function of the facilities involved, with due regard for the convenience of the public served and the maintenance and improvement of safe and healthful working conditions for employees;

(2) Consideration shall be given in the selection of sites for Federal facilities to the need for development and redevelopment of areas and the development of new communities, and the impact a selection will have on improving social and economic conditions in the area. In determining these conditions the Administrator shall consult with and receive advice from the Secretary of Housing and Urban Development, the Secretary of Health, Education and Welfare, the Secretary of Commerce, and others, as appropriate;

(3) Maximum use shall be made of existing Government-owned permanent buildings which are adequate or economically adaptable to the space needs of executive agencies;

Executive Order 11512, 35 Fed.Reg. 3979 (March 3, 1970).

■ Before considering the justificaton for an injunction, it is necessary to deal with defendants' assertion that plaintiffs lack standing to enforce the Executive Order. It is true that none of the plaintiffs are employees at the new IRS facility, but there is no one else at present in a position to represent the prospective employees. Moreover, non-employees may be affected by increased demand for low-income housing, and come within the ambit of those affected by "the impact a selection will have on improving social and economic conditions in the area." (Subsection 2). It is only necessary that plaintiffs be "within the zone of interests to be protected or regulated." Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 154, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970); Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920 (2d Cir. 1968).

■ The Executive Order, having been issued and published by the President pursuant to statutory authority, is not a mere internal housekeeping arrangement, as asserted by defendants. Private citizens have a right to review compliance with both statutes and regu-

lations relating to the provision of publicly assisted housing. Shannon v. United States Department of Housing and Urban Development, 436 F.2d 809 (3d Cir. 1970). This is a specific application of the general principle that government agencies may be required to live up to their own rules. Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968).

The failure of GSA to comply with the Executive Order has been sufficiently shown, for purposes of a preliminary injunction, to justify passing to the question of relative hardships in granting or denying injunctive relief. GSA's reliance on a 1967 FHA housing survey cannot constitute compliance with its duty to consult with and receive advice from HUD.

An injunction against occupying the IRS facility at this time would be a drastic remedy. It is apparent that any court-ordered postponement of the occupancy of the IRS building will result in substantial waste of public funds.

Plaintiffs' activities in the law suit indicate delays which a court of equity may properly consider in determining the right to a provisional remedy. Some of the plaintiffs began to express concern about the housing to be provided in connection with the IRS building as early as the fall of 1970. This action was not filed until August 1971. The motion for preliminary injunction was not filed until March 25, 1972, after construction of the IRS building had been substantially completed. An injunction against occupancy is not justified in those circumstances.

Different considerations apply to the requested injunction against disposal of the AFB units. There is no evidence that GSA will suffer any substantial hardship from delay in disposal of this surplus housing. The fact that the government has not yet finished paying for the housing units is irrelevant. A debt to the Harlem Savings Bank should not deprive black residents of Brookhaven of having their interests in adequate housing considered. With the public debt in the area of four hundred billion dollars, it could be said that the cost of most public buildings has not yet been fully paid.

The court will not direct GSA to consider the specific proposal of HoMeS, Inc., but it will require that the AFB units be retained until determination of the issues in this action shows whether they are necessary for IRS employees or others who are affected by the new facility, or until a plan of disposal is submitted which protects the interests of low-income and minority groups.

The defendants express dismay that the question of the AFB units is presented now, without having been specifically mentioned in the complaint. However, no specific prejudice is shown. If equitable considerations prevent granting plaintiffs' primary request, to enjoin occupancy of the IRS facility, the court may adopt an alternative form of relief which will meet the exigencies of plaintiffs' situation.

Defendants urge a narrow interpretation of GSA's duties under the Executive Order. It appears to the court, however, that the Executive Order was intended for the benefit of both employees and non-employee residents of the area, and that it calls for affirmative action, as indeed it was construed to do in the Memorandum of Understanding. Although the IRS project was in the planning stage before the Executive Order was issued, it is neither inequitable nor impractical to apply the Executive Order here, to the extent of requiring that the AFB units be held until the determination of the issues.

Defendants fear that Southampton interests may be harmed by delay in disposal of the AFB units. It will be time enough to deal with that question when and if the Southampton agency asks to intervene.

Substantial issues of fact and law are presented in the case. It appears unlikely, however, that additional hearings or briefing, within the limits appropriate in connection with a preliminary in-

junction, would alter the conclusions reached herein.

It is ordered that defendants, including General Services Administration, its agents, officers and employees, be enjoined from disposing of any housing units located at Suffolk Air Force Base, directly or indirectly, or negotiating or executing any agreement for their disposal, without first making provision satisfactory to plaintiffs' counsel or to this court for assuring the availability of the units for low-income and minority groups, including employees at the Internal Revenue Service facility in the Town of Brookhaven, and that in all other respects the motion be denied.