Jack **COGHILL** et al., Appellants,

v.

H. A. **BOUCHER,** Lieutenant Governor of the State of Alaska, Appellee.

No. 1798.

Supreme Court of Alaska.

July 13, 1973.

Douglas B. Baily, Matthews, Dunn & Baily, Anchorage, for appellants.

John E. Havelock, Atty. Gen., Juneau, Timothy G. Middleton, Asst. Atty. Gen., Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN and BOOCHEVER, JJ.

## OPINION

RABINOWITZ, Chief Justice.

The validity of the manner in which the lieutenant governor of Alaska promulgated certain regulations pertaining to the counting of ballots prior to the closing of polls in statewide elections is questioned in this appeal.

The Alaska legislature enacted the so-called "early count" statute in 1972. This enactment permits the commencement of the counting of ballots in certain designated precincts prior to the closing of the polls in statewide elections.[1] The lieutenant governor is statutorily charged with the general responsibility of supervising statewide elections [2] and is given specific discretion under AS 15.15.330 to designate the qualified precincts which will use the "early count" procedures.

In the instant case, appellants are residents and registered voters of the state of Alaska. Additionally, one of the appellants is a duly-appointed poll watcher in Precinct 118 of Anchorage: a precinct which has in excess of 300 voters and which therefore qualifies for the so-called "early

[1.] AS 15.15.330 provides:
Counting of paper ballots may begin before the polls are closed in precincts having 300 or more voters and designated by the lieutenant governor; however, counting shall not in any event begin before 2:00 p. m. prevailing time and unless at least 100 votes have been cast. In all other precincts, when the polls are closed and the last vote has been cast, the election board and clerks or counters shall immediately proceed to open the ballot box and to count and canvass the votes cast. In all cases the election board shall cause the canvass to be continued without adjournment until the canvass is complete.

[2.] AS 15.15.010.

count" vote-tallying procedures under AS 15.15.330.

Appellants commenced this action by filing a complaint for injunction, together with a motion for a preliminary injunction, in the superior court. In their motions for preliminary and permanent injunctive relief, appellants sought to enjoin the lieutenant governor from authorizing procedures for the then-upcoming November 7, 1972 general election as well as all future statewide elections which would: allow the removal of ballot boxes from the polls or the counting of ballots prior to the closing of the polls; deny any poll watcher the right to be present at both the polling and counting places; infringe upon their constitutional right to vote in secrecy; or allow changes in ballot counting techniques pursuant to rules not promulgated in conformity with the requirements of the Alaska Administrative Procedure Act,[3] (A.P. A.).

After hearing, the superior court denied appellants' motion for preliminary injunction, holding that appellants had failed to demonstrate how their constitutional right to vote in secrecy or their statutory rights as poll watchers would be impaired. The court further held that the lieutenant governor was not obliged to promulgate the "early count" regulations in accordance with the requirements of the A.P.A., and that therefore, appellants lacked standing

under that statute to challenge such regulations. The superior court also concluded that appellants lacked standing under other election code provisions but possessed standing with which to raise their constitutional claim of impairment of the right to vote in secrecy. Thus the court dismissed all but their constitutional claim. Subsequently, by virtue of entering a final order embodying findings of fact and conclusions of law, as prepared by appellee, the superior court went beyond its initial order and dismissed all of appellants' claims for relief, including their constitutional claim. Appellants now appeal from the superior court's final order.[4]

At the outset we are confronted with a question of appellants' standing to challenge the validity of the regulations promulgated by the lieutenant governor under the "early count" statute. A determination of the standing issue, however, depends at least in part upon the resolution of the question of the applicability of the A.P.A. to the lieutenant governor's regulations now questioned. If the A.P.A. is inapplicable then appellants cannot rely upon the standing provisions of the A.P.A. to contest the regulations.[5] If, however, the A. P.A. is applicable then a further question arises as to whether appellants possess standing as "interested persons" within the meaning of that act.[6] Thus, our threshold inquiry must focus upon the question of

3. AS 44.62.010 et seq.

4. Appellants initially sought review only of the superior court's original order denying their motion for preliminary injunction. This court, however, elected to treat their petition for review as an appeal from the superior court's final order and granted appellate jurisdiction in this case. App.R. 46; Mallonee v. Grow, 502 P.2d 432, 435 (Alaska 1972). The parties were then afforded an opportunity to rewrite their appellate briefs and oral argument was held. At oral argument, counsel for appellants indicated that appellants had abandoned their constitutional claim.

5. In concluding that the A.P.A. was inapplicable, the superior court was apparently willing to interpret appellants' request for injunctive relief as an applica-

tion for declaratory relief as required by that statute. AS 44.62.300. Specifically, the lower court stated:

> Nor am I concerned with the form of the action so much as the substance of the contentions made by the parties.

6. AS 44.62.300 provides:

> An interested person may get a judicial declaration on the validity of a regulation by bringing an action for declaratory relief in the superior court. In addition to any other ground the court may declare the regulation invalid (1) for a substantial failure to comply with §§ 10–320 of this chapter, or (2) in the case of an emergency regulation or order of repeal, upon the ground that the facts recited in the statement do not constitute an emergency under § 250 of this chapter.

the applicability of the A.P.A. to the challenged regulations.

The applicability of the A.P.A. to the lieutenant governor's regulations in question depends upon construction of AS 15.-15.010, which provides in relevant part:

The lieutenant governor shall provide general administrative supervision over the conduct of state elections, and *may issue any regulations under the Administrative Procedure Act (AS 44.62)* necessary for the administration of elections to protect the interest of the voter and assure administrative efficiency . . . . (Emphasis added.)

Appellants construe the statute to mean that the lieutenant governor has "the option of issuing certain regulations for the administration of elections or, in the alternative, to decline to issue such regulations." They contend, however, that if the lieutenant governor elects to issue regulations under the enactment, then such regulations must be promulgated under the procedural safeguards afforded by the Administrative Procedure Act. Appellee, on the other hand, interprets AS 15.15.010 to mean that he may, in his discretion, issue regulations under the A.P.A., but that he is not compelled to do so by the terms of the statute. Appellee further argues that he is exempt from the A.P.A. by the provisions of that act since his regulations pertain to a specific group of people and concern only the "internal management of a state agency." Finally, appellee argues that even if the A.P.A. applies to him, appellants still lack standing thereunder because they are not "interested persons" within the meaning of the A.P.A.

The legislative history of Alaska's election code tends to support appellants' interpretation of AS 15.15.010. While there appears to be no legislative history pertaining particularly to AS 15.15.010, the development of AS 15.10.020 is illuminating.

More precisely, that provision currently provides:

The lieutenant governor shall have the exclusive power to modify the boundary of a precinct and to establish or abolish a precinct and polling place in the state by rules adopted under the Administrative Procedure Act . . . .

The history of AS 15.10.020 suggests that the legislature's reference to "rules adopted under the Administrative Procedure Act" was intentional. That is, the election code was originally known as House Bill No. 252 during the 1960 legislative session. The bill was replaced by the Committee Substitute for House Bill No. 252 and referred to the Senate State Affairs Committee. The Senate Affairs Committee favorably reported the bill out to the Senate with the following proposed amendment, among others:

Page 4, line 1: Add a new sentence as follows:

'The secretary of state may establish or change any precinct polling place in the state by *rules or order which may be promulgated without compliance with the Administrative Procedure Act.*' 1960 Sen. Journal at 634. (Emphasis added.)

The bill then went to the Conference Committee with Powers of Free Conference, which deleted the proposed amendment. Accordingly, the final version of the enacted provision, which was essentially the same as the current provision,[7] contained the specific reference to the A.P.A. More importantly, had the legislature intended to empower the executive branch of government to alter precinct boundary lines by promulgating regulations without complying with the A.P.A. it would have adopted the proposed amendment and expressly said so. Thus, the reference to the A.P.A. was intentional and reflected the legislature's desire to make the A.P.A. requirements mandatory.

---

7. Ch. 83, § 2.02, S.L.A.1960 provided:
   The secretary of state shall have the exclusive power to modify the boundary of any precinct and to establish or abolish any precinct and polling place in the state by rules adopted pursuant to the Administrative Procedure Act.

A related provision with a similar reference to the A.P.A. is AS 15.10.030, which provides:

> The precinct boundaries established by the lieutenant governor shall be the boundaries for both state and local elections. The lieutenant governor by regulation pursuant to the provisions of the Administrative Procedure Act . . . may authorize the combining, consolidation, or altering of precinct boundaries for local elections.

No attempt was made by the Senate Affairs Committee to delete the reference to the A.P.A. in this provision. Again, the legislature demonstrated its intention that executive regulations pertaining to state elections be subjected to the safeguards of the A.P.A.

Significantly, the wording of the reference to the A.P.A. in AS 15.10.030 is quite similar to that used in AS 15.15.010: the provision in question in the case at bar. The former section provides in part that, "The lieutenant governor by regulation pursuant to the provisions of the Administrative Procedure Act (AS 44.62) may authorize . . ." certain changes. The latter section provides that, "The lieutenant governor shall provide general administrative supervision over the conduct of state elections, and may issue any regulations under the Alaska Administrative Procedure Act (AS 44.62) . . . ." The only difference between the operational portions of these two sections is that in the former, the verb "may" follows the A.P.A. clause while in the latter, it precedes the A.P.A. clause. From the foregoing we are convinced that the legislature intended that certain regulations pertaining to statewide elections and promulgated by the lieutenant governor should be subjected to the safeguard requirements of the A.P.A. To construe AS 15.15.010 as appellee urges would be to render the A.P.A. clause in that enactment mere surplusage. The presence of the A.P.A. clause in AS 15.15.010 reflects the legislature's intention that the A.P.A. be mandatorily applied to regulations promulgated in accordance with that provision. Moreover, as the history of AS 15.-10.020 suggests, the 1960 Alaska legislature would have expressly indicated that the A.P.A. was not mandatory in AS 15.-15.010, had it intended to do so. Since it did not, and since the A.P.A. clause was expressly included in AS 15.15.010, we are persuaded that appellants' statutory construction is correct.

■ AS 15.15.330, the "early count" enactment, must then be read in conjunction with the requirements of AS 15.15.010. Regulations promulgated under the latter provision concerning the early tallying of ballots in selected precincts qualify as "regulations . . . necessary for the administration of elections to protect the interest of the voter and assure administrative efficiency . . ." within the meaning of AS 15.15.010. Thus, we hold that the provisions of the A.P.A. apply to the questioned regulations promulgated by the lieutenant governor under the authority of AS 15.15.330, the "early count" statute.

Strong considerations of public policy are embodied in our conclusion. Specifically, the public's faith in the electoral process is vital to the proper functioning of our democratic system of government. Popular confidence in the efficacy of public elections depends upon the maintenance of integrity throughout the ballot counting procedures. One means of assuring the preservation of such integrity in these vote-tallying procedures is to subject executive regulations pertaining thereto to public scrutiny under the provisions of the A. P.A. Executive control of this sensitive aspect of the political process is precisely the type of issue upon which public examination and debate should be invited. Voters are entitled to know well in advance of a statewide election, exactly how and where their ballots will be counted, in what manner and under what type of supervision their ballots will be transported from polling places to counting places, what security precautions will be established and implemented, and other similar procedures.

Appellee, however, further contends that regulations promulgated under AS 15.15.-330 are exempt from the requirements of the A.P.A. by operation of AS 44.62.040 [8] and AS 44.62.640,[9] since such regulations are not of "general application" but pertain only to the "internal management of a state agency." We disagree. Assuming that the lieutenant governor's office qualifies as a "state agency" within the meaning of the A.P.A.,[10] we cannot agree that the supervision of personnel and activities relating to the conduct of a statewide election is the same as the management of employees and internal affairs of a state agency. Executive organization of the election machinery goes well beyond the lieutenant governor's control of his own staff and their actions. As acknowledged by counsel for appellee during oral argument, some of the challenged election regulations in the case at bar extended to poll watchers, ballot counters, security guards and others: persons who were not members of the lieutenant governor's staff, who were not a part of the internal regulation of a state agency. In short, we decline to construe the phrase "internal management of a state agency" to encompass all individuals and activities affected by regulations promulgated by the lieutenant governor during a statewide election.

Our holding today, however, does not emasculate the "internal management" exception to the A.P.A. We recognize, of course, that some mundane instructions issued by the lieutenant governor to his staff members need not be subjected to the requirements of the A.P.A. Application of the "internal management" exception to all of appellee's instructions, directives and orders issued in regard to a statewide election presents "line-drawing" problems which may have to be resolved on a case-by-case basis. Yet, the provisions of that exception to the A.P.A. offer some guidance to appellee in determining which regulations fall within the requirements of the A.P.A. AS 44.62.640(a)(2) provides in part:

. . . whether a regulation, regardless of name, is covered by this chapter depends in part on *whether it affects the public* or is used by the agency in dealing with the public; . . . (Emphasis added.)

In the instant case, we hold only that the "early count" regulations which have been questioned clearly "affect the public" and fall outside the scope of the "internal management" exception to the A.P.A.

Nor is a contrary conclusion compelled by San Joaquin v. State Board of Equalization,[11] cited by appellee for the

8. AS 44.62.040(a)(3) concerns the submission, filing and publication of regulations and provides:

(a) Every state agency which by statute possesses regulation-making authority shall submit to the lieutenant governor for filing a certified original and one duplicate copy of every regulation or order of repeal adopted by it, except one which

.    .    .    .    .

(3) is directed to a specifically named person or to a group of persons and *does not apply generally* throughout the state.

9. AS 44.62.640(a)(2) defines "regulation" as follows:

(2) "regulation" means every rule, regulation, order, or standard of general application or the amendment, supplement or revision of a rule, regulation, order or standard adopted by a state

agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure, except one which relates only to the internal management of a state agency; . . .

10. AS 44.62.640(a)(3) and (4) provide:
(3) "lieutenant governor" means the office of the lieutenant governor in the executive branch of the state government, or another agency designated by executive order under the constitution;
(4) "state agency" means a department, office, agency, or other organizational unit of the executive branch, except one expressly excluded by law, but does not include an agency in the judicial or legislative branches of the state government.

11. 9 Cal.App.3d 365, 88 Cal.Rptr. 12 (1970).

proposition that "courts do recognize that there are procedures used by administrative agencies which are exceptions to the Administrative Procedure Act . . . ." The fact that some administrative procedures may be exceptions to the A.P.A. does not mean that the regulations in question in the case at bar are also exempt from the requirements of that statute. For the reasons set forth earlier in this opinion, we have concluded that the instant regulations are not exempt from the A.P.A.

■ Since we have determined that the A.P.A. applies to appellee and the regulations issued by him under AS 15.15.330, we turn now to the question of whether appellants have standing, under the A.P.A., to assert their claims for relief in the case at bar. Appellee contends that even if the A.P.A. applies to him and the regulations in question, appellants still lack standing since they are not "interested persons" within the meaning of that statute.

The trend of federal and state authorities on the question of standing over recent years has been toward the emasculation of restrictive, exclusionary requirements and increased accessibility to judicial forms. In federal courts particularly, standing as a constitutional limitation on jurisdiction has been significantly attenuated. As the United States Supreme Court stated in Association of Data Processing Service Organizations, Inc. v. Camp:[12]

"[I]n terms of Article III limitations on federal court jurisdiction, the question of standing is related only to whether the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution." [13]

Similarly, courts have been increasingly willing to find that litigants possessed standing to sue under statutes. As the Supreme Court of the United States in *Data Processing* observed:

Where statutes are concerned, the trend is toward enlargement of the class of people who may protest administrative action. The whole drive for enlarging the category of aggrieved "persons" is symptomatic of that trend.[14]

The construction of the concept of "interested persons" under the A.P.A. is a question of first impression in Alaska. In the past, however, this court has departed from a restrictive interpretation of the standing requirement. Specifically, we found that parties possessed standing to challenge administrative action in K & L Distributors, Inc. v. Murkowski.[15] There, writing for this court, Justice Erwin observed:

The need for review in certain cases may make it desirable to allow standing to one whose primary interest is not in the direct outcome of the administrative action, but in its competitive effect on his economic interest.[16]

Further, in that case we embraced Professor Jaffe's progressive conception of the standing requirement:

"But standing, as is true of the other criteria, should not be conceived as furnishing a clear-cut test of jurisdiction. In cases where the authority of Frothingham v. Mellon does not exclude jurisdiction, the attenuated character of the particular impact on the plaintiff should be relevant but not conclusive against jurisdiction. In such a case the standing criterion should be assessed together with the other criteria of jurisdiction. Particularly relevant to the exercise of jurisdiction is the presence of a clear-cut issue apt for judicial determination—an

---

12. 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed. 2d 184 (1970).

13. *Id.* at 151–152, 90 S.Ct. at 829, 25 L. Ed.2d at 187.

14. *Id.* at 154, 90 S.Ct. at 830, 25 L.Ed.2d at 189; *but compare* Sierra Club v. Mor-

ton, 405 U.S. 727, 92 S.Ct. 1361, 31 L. Ed.2d 636 (1972).

15. 486 P.2d 351 (Alaska 1971).

16. *Id.* at 353.

issue for the resolution of which the authoritative legal norms can provide an adequate rule. Such a case is, in my opinion, one in which under our system of expectations, judicial intervention is warranted. Neither the competences of the judicial power nor its dangers can be strictly related to a standing requirement. The lack of conventional standing may, indeed, signal the absence of a desirable maturity or of an issue capable of effective judicial resolution. (Footnotes omitted.)"[17]

And in Boucher v. Bomhoff,[18] we impliedly found that registered voters had standing to contest the wording of a referendum ballot. In the case at bar, we conclude that a retreat to restrictive notions of standing, as urged by appellee, would not advance the public's vital interest in maintenance of the integrity of vote-tallying procedures during statewide elections. Denial of standing to appellants in the instant case would have the effect of unduly limiting the possibility of a popular check upon executive control of the election process. If registered voters and poll watchers are foreclosed from seeking judicial review of administrative regulation of this sensitive aspect of our governmental system, then it may well be that any review of executive activity in this area would be completely foreclosed, particularly in the event that candidates or political parties were unwilling to challenge such administrative actions. We decline to restrict the public's access to Alaska's courts in such a manner.[19] Rather, we hold that appellants possessed standing as "interested persons" under the A.P.A. in the case at bar to challenge the regulations promulgated by the lieutenant governor under AS 15.15.-330.[20]

In accordance with our conclusions that the A.P.A. applies to regulations promulgated by the lieutenant governor pursuant to the "early count" statute, and that appellants possess standing under the A.P.A. to challenge the manner in which such regulations were issued, we reverse the final order of the superior court which dismissed all of appellants' claims for relief. In fashioning appropriate relief for appellants, however, we are not obliged to invalidate the November 7, 1972 statewide election in which ballots were tallied in accordance with "early count" procedures not promulgated in conformity with the A.P.A.[21] Rather, we reverse and remand the instant case to the superior court with instructions to enter a judgment declaring that the challenged "early count" regulations are invalid and prohibiting the lieutenant governor from conducting any future statewide elections in which "early

17. *Id.* at 353–354; *see also* Jaffe, Standing to Secure Judicial Review: Private Actions, 75 Harv.L.Rev. 255, 304–05 (1961).

18. 495 P.2d 77 (Alaska 1972).

19. As noted in a somewhat related context in Brookhaven Housing Coalition v. Kunzig, 341 F.Supp. 1026 (E.D.N.Y.1972):
   Private citizens have a right to review compliance with both statutes and regulations relating to the provision of publicly assisted housing. This is a specific application of the general principle that government agencies may be required to live up to their own rules. 341 F.Supp. at 1029–1030. (Citations omitted.)

20. Compare the unique approach to the standing doctrine for public-spirited parties urged by Justice Blackmun, dissenting in Sierra Club v. Morton, *supra*:
   . . . I would permit an imaginative expansion of our traditional concepts of standing in order to enable an organization such as the Sierra Club, possessed, as it is, of pertinent, bona fide and well-recognized attributes and purposes in the area of environment, to litigate environmental issues. This incursion upon tradition need not be very extensive. Certainly, it should be no cause for alarm. 405 U.S. at 747, 92 S.Ct. at 1377, 31 L.Ed.2d at 655.

21. At oral argument, counsel for appellants reformulated the latters' requested remedy and indicated that appellants now seek only prospective declaratory relief.

count" regulations are promulgated not in conformity with the applicable provisions of the A.P.A.[22]

Reversed and remanded.

FITZGERALD, J., not participating.

22. Appellee has expressed the concern that "[i]f the early count procedure must be enacted by the promulgation of regulations pursuant to the Administrative Procedures Act, then the remainder of the Lieutenant Governor's instructions are also subject to attack on the same basis." Since only the regulations implementing the "early count" statute were challenged in the instant action, we decline to consider the validity of other election regulations which may not have been promulgated in conformity with the A.P.A. We note, however, that the promulgation of such latter election regulations in compliance with the A.P.A. could easily be accomplished by the lieutenant governor prior to the next general election.