**Robert WARTH, Individually and on behalf of all other persons similarly situated, et al., Plaintiffs-Appellants.**

v.

**Ira SELDIN, Chairman, et al., Defendants-Appellees.**

**Nos. 139, 144, Dockets 73–1748, 73–1749.**

United States Court of Appeals, Second Circuit.

Argued Nov. 27, 1973.

Decided April 18, 1974.

---

Emmelyn Logan-Baldwin, Rochester, N. Y. (Frank A. Aloi, Robinson, Williams, Robinson & Angeloff, Rochester, N. Y., on the brief), for plaintiffs-appellants Warth, Reichert, Vinkey, Harris, Ortiz, Broadnax, Reyes, Sinkler, and Metro-Act of Rochester, Inc.

Michael Nelson, Rochester, N. Y., and Richard Wesley, on the brief, for plaintiff-appellant Housing Council in the Monroe County Area, Inc.

Sanford J. Liebschutz, Rochester, N. Y. (Liebschutz, Rosenbloom & Samloff, Rochester, N. Y., on the brief), for intervenor-appellant Rochester Homebuilders Ass'n, Inc.

Douglas S. Gates, Rochester, N. Y. (Harris, Beach & Wilcox, Rochester, N. Y., on the brief), for defendants-appellees.

The National Committee Against Discrimination in Housing (Norman C. Amaker and Mollie W. Neal, Washington, D. C., on the brief), filed a brief as amicus curiae urging reversal.

Before MOORE, HAYS and TIMBERS, Circuit Judges.

HAYS, Circuit Judge:

Appellants brought this suit as a class action against the appellees, the Town of

Penfield, New York, and the members of its Town Board, Town Planning Board, and Zoning Board. The complaint alleged that the town's zoning laws, on their face and as applied, violated appellants' rights under the first, ninth, and fourteenth amendments to the Constitution of the United States and 42 U.S.C. §§ 1981, 1982, and 1983. The district court dismissed the complaint for lack of standing and failure to state a claim upon which relief could be granted and denied appellants class action status. The court also denied a motion by the Rochester Homebuilders Association, Inc., to intervene as a plaintiff.

We affirm on the ground that appellants lack standing.

## I. FACTS

Accepting appellants' factual allegations as true, as we must, we find the following facts relevant. The Town of Penfield is a suburb of Rochester. Its zoning laws are fairly typical for a suburban community. The town has zoned 90% of all vacant land for single family detached housing. The ordinance also fixes minimum lot sizes, floor areas, lot widths, and setbacks for dwellings. Where the ordinance does permit multi-family dwellings, it limits density to twelve units per acre, limits the portion of the lot which may be occupied by the dwelling, and requires a minimum number of garage and unenclosed parking facilities for each unit.

The ordinance provides for Planned Unit Developments (PUD), which may contain a mixture of single-family and multi-family units. A substantial part of each PUD must be reserved for single-family dwellings with specified minimum acreages.

Appellants' complaint goes beyond the face of the town's zoning laws and further alleges certain affirmative acts which it claims deprived them of their rights. These acts involve various proposals by builders for multi-family housing in Penfield. One Joseph Audino on several occasions proposed a PUD for a site known as Beacon Hills. The Town Planning Board first denied the proposal, then accepted it with certain modifications which reduced the permissible density. The Town Board first accepted the proposal with the modifications, then rescinded the necessary rezoning. The town apparently claims that sewer facilities in the district are inadequate to serve the proposed development. The builder now plans to pump sewage to another district. Neither the· builder nor anyone associated with him is a plaintiff in this action.

Penfield Better Homes, Inc., has proposed a project known as Highland Circle for "low moderate income housing." In September 1969 the Planning Board denied the proposal on a number of grounds. The corporation is not a plaintiff nor associated with any plaintiff in this action.[1]

A proposal by O'Brien Homes, Inc., to build apartment housing was originally denied. The Planning Board has yet to act on a modification of the same proposal.

Appellants also refer to several other proposals for apartment housing which have met with little success. They claim that only two proposals for PUDs have passed the first stage of the necessary three stages of approval. In no case do appellants allege any involvement in these proposals.

Appellants argue that the Penfield zoning laws, on their face and as applied, violate their rights in a number of ways. First, appellant taxpayers of Rochester claim that because of Penfield's zoning laws the City of Rochester must assume more than its "fair share"

---

1. Penfield Better Homes is a member of appellant Housing Council in the Monroe County Area, Inc. However, this does not suffice to give Housing Council standing. See discussion of Housing Council, infra.

Appellants also allege that one director of Penfield Better Homes is a member of appellant Metro-Act of Rochester. This even more clearly fails to confer standing. See discussion of Metro-Act, infra.

of low income, tax abated housing property, thereby shrinking Rochester's tax base and forcing property owners in Rochester to pay higher property taxes.[2] Second, appellants claim that Penfield's zoning practices unconstitutionally bar low and middle income persons, especially members of racial minority groups, from residing in Penfield.[3] Intervenor-appellant Rochester Homebuilders Association, Inc. claims that the town's zoning practices have deprived its members of the opportunity to construct housing for low and middle income persons, thereby harming the association's members financially.

Appellants seek a declaratory judgment that Penfield's zoning practices are illegal, an injunction against enforcing the zoning ordinance, an injunction compelling enactment of an acceptable ordinance, and monetary damages.

## II. STANDING

■ Although the Supreme Court has discussed standing to sue on many occasions, certain aspects of the doctrine continue to present difficulties. Moreover, during the last few years the Court has revolutionized the law of standing. In Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L. Ed.2d 184 (1970), and Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970), the Court announced a two-pronged test of standing: the plaintiff must allege an "injury in fact," and must seek to protect an interest "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Data Processing*, supra, 397 U.S. at 152–153, 90 S.Ct. at 830. However, the Court has not explained what constitutes

an "injury in fact." See Dugan, Standing to Sue: A Commentary on Injury in Fact, 22 Case W.Res.L.Rev. 256, 258 (1971). Moreover, reliance on precedents is especially hazardous in this area. As the Court remarked in *Data Processing*, "[g]eneralizations about standing to sue are largely worthless as such." 397 U.S. at 151, 90 S.Ct. at 829. The Court has laid down some rules in certain areas, such as taxpayer, competitor, and environmental suits. Except for appellants who claim standing as taxpayers, however, these rules are not very helpful here.[4]

Standing is an element of justiciability, "surrounded by the same complexities and vagaries that inhere in justiciability." Flast v. Cohen, 392 U.S. 83, 98, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968).

The gist of the question of standing is whether the plaintiff has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). See also O'Shea v. Littleton, 414 U.S. 488, 94 S. Ct. 669, 675, 38 L.Ed.2d 674 (1974); Flast v. Cohen, supra, 392 U.S. at 99, 88 S.Ct. 1942.

*A. Appellant Taxpayers of Rochester*

Appellants Vinkey, Reichert, Warth, and Harris own land within the city of Rochester. They claim that the Penfield zoning laws exclude low and moderate income persons, thereby requiring Rochester to permit more than its "fair share" of tax-abated housing projects. This shrinks the tax base of Rochester,

2. These appellants also claim that appellees deprive them of a fair share of their federal tax dollars by refusing to permit federally financed housing in the town.

3. Appellants also claim that appellees' practices violate their right to travel under the first, ninth, and fourteenth amendments and their right of peaceable assembly under the first and fourteenth amendments.

4. In *Data Processing* the Court acknowledged the limited authority of standing cases from one area in relation to cases in other areas:

"*Flast* was a *taxpayer's* suit. The present is a *competitor's* suit. And while the two have the same Article III starting point, they do not necessarily track one another." 397 U.S. at 152, 90 S.Ct. at 829 (emphasis in original).

which then must impose higher tax rates on appellants and others similarly situated in order to meet its fiscal needs.

As a general rule the interests of a federal taxpayer in federal expenditures are too "minute and indeterminable . . . fluctuating and uncertain" to provide a basis for standing. Frothingham v. Mellon, 262 U.S. 447, 487, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923). The rule applies equally to state taxpayer suits in federal courts. Doremus v. Board of Education, 342 U. S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952). In Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942 (1968), the Court created an exception to the rule: a federal taxpayer may contest measures alleged to violate "specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power." Id. at 103, 88 S.Ct. at 1954.

Appellants do not allege a violation of a "specific constitutional limitation" on taxing and spending. Indeed, they do not even allege that Rochester's taxes or expenditures are unconstitutional. They allege only that certain acts of appellees which do not involve taxing or spending have operated to raise their taxes.

In *Flast* the Court stated that its decision was "consistent with the limitation upon state-taxpayer standing in federal courts in *Doremus* . . . ." 392 U.S. at 102, 88 S.Ct. at 1954. Certainly if taxpayer standing was not justified in *Doremus* because plaintiff's interest was too remote, standing cannot be found here, where there is such an attenuated line of causation between the allegedly illegal acts (Penfield's zoning laws) and the injury of which appellants complain (higher property taxes). A great variety of actions taken by a state or a municipality might arguably affect the rate of taxation in other states or towns. This hardly gives taxpayers in the affected states or towns standing to contest all such actions.[5]

## B. *Individual Appellants Claiming Standing on Other Grounds*

Appellants Broadnax, Sinkler, and Reyes are blacks and Puerto Ricans of low income who reside in Rochester. Each has sought but failed to obtain housing in Penfield. They allege that Penfield's zoning laws effectively bar low income housing within the town and therefore exclude them and persons similarly situated from living in Penfield. Appellant Ortiz lives in Wayland, New York, and works in Penfield. He makes the same allegations as appellants Broadnax, Sinkler and Reyes, and in addition claims as injury the commuting expenses he incurs because he cannot live in Penfield.

None of the appellants claims that anyone has refused to sell or lease housing or property to him. Indeed, appellants concede that they cannot afford any existing housing within the town. They do not claim to have any interest in land within the town or any connection with any plan to construct housing for them within the town.

The Supreme Court has not established guidelines as to what constitutes an injury in fact for purposes of standing in this area. Nor have the lower federal courts, in this circuit or otherwise, considered the specific issue raised here. Appellants cite several federal cases in which a party was held to have standing to challenge zoning on civil rights grounds. In most of these cases the party attacking zoning had an interest in land.[6] A few cases in other cir-

5. Appellants also base a claim of standing on their status as federal taxpayers. See note 2, supra. This claim does not attack a spending measure of Congress and is not based on a specific constitutional limitation on spending. The claim therefore fails.

6. In Kennedy Park Homes Ass'n, Inc. v. City of Lackawanna, 436 F.2d 108 (2d Cir. 1970), cert. denied, 401 U.S. 1010, 91 S.Ct. 1256, 28

L.Ed.2d 546 (1971), the Diocese of Buffalo had committed itself to sell thirty acres of land it owned in Lackawanna to Kennedy Park Homes for low-income housing. Both the Diocese and the Association clearly had an interest in land.

In Township of River Vale v. Town of Orangetown, 403 F.2d 684 (2d Cir. 1968), this court held that plaintiff town had standing

cuits have taken a short step beyond this. In Park View Heights Corp. v. City of Black Jack, 467 F.2d 1208 (8th Cir. 1972), and Dailey v. City of Lawton, 425 F.2d 1037 (10th Cir. 1970), developers contested zoning which prevented them from building low income housing projects on parcels of land which they owned. In both cases the court permitted potential residents of the proposed projects to join as plaintiffs. Without deciding whether we approve these holdings, we note that the standing of potential residents in these cases presents an issue very different from the one presented here. The focusing of the controversy on a particular project assures "concrete adverseness." The concrete possibility of obtaining new and better housing gives potential residents a personal stake in the outcome. The relief requested is not hypothetical.

The requirement of standing helps to insure that "the questions will be framed with the necessary specificity . . . to assure that the constitutional challenge will be made in a form traditionally thought to be capable of judicial resolution." Flast v. Cohen, 392 U.S. 83, 106, 88 S.Ct. 1942, 1955 (1968). See also Barlow v. Collins, 397 U.S. 159, 167, 171, 90 S.Ct. 832 (1970) (Brennan, J., concurring). In the instant case appellants cannot establish this specificity and the necessary "concrete adverseness."

The doctrine of standing also turns on whether the party in question has a "personal stake in the outcome of the controversy." O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974); Sierra Club v. Morton, 405 U.S. 727, 732, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed. 2d 663 (1962). Appellants lack such a personal stake. The essence of their complaint is that the zoning practices of the appellees are unfair. However true that charge may be, absent a showing that appellants themselves have suffered from these practices they lack standing to challenge them. Their dispute with appellees reflects primarily a political disgruntlement. They indicate no benefit which a judgment favorable to them would produce. They allege neither capability nor intent to construct housing for themselves on any land which the court might order rezoned as an element of relief.

Indeed, appellants' prayer for relief demonstrates their lack of personal stake in the outcome and their lack of standing. They request equitable relief in the form of a declaration that the Penfield zoning ordinance is unconstitutional, an injunction against enforcing it, and an injunction requiring enactment of a new ordinance. Granting this relief would not clear roadblocks to currently planned housing which appellants hope to occupy. It would not benefit ap-

to sue defendant town which had rezoned property adjoining plaintiff on the allegation that the zoning was arbitrary and capricious and would injure plaintiff by reducing its revenues. We held that plaintiff need not be a resident of the town whose zoning practices were challenged. Id. at 686. We did not abandon the requirement, which plaintiff clearly met, that a party have a personal stake in the outcome. The holding reflects the obvious point that landowners may be affected by the zoning of adjoining properties, and that this interest suffices to confer standing. Cf. 3 K.C. Davis, Administrative Law Treatise § 22.16 at 283 (1958).

Neither Boraas v. Village of Belle Terre, 476 F.2d 806 (2d Cir.), prob. juris. noted, 414 U.S. 907, 94 S.Ct. 234, 38 L.Ed.2d 145 (1973), nor Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920 (2d Cir.

1968), involved the kind of standing issue presented here. In *Boraas* we granted standing to unrelated persons living together in an apartment to challenge an ordinance limiting the right of unrelated persons to live in the same dwelling. In *Norwalk CORE* persons displaced by urban renewal had standing to challenge the city's procedures in relocating them. In each case plaintiff's personal stake was clear.

In most of the civil rights challenges to zoning in other circuits plaintiffs also had some interest in land sufficient to warrant standing. See Southern Alameda Spanish Speaking Org. v. City of Union City, 424 F. 2d 291 (9th Cir. 1970); Sisters of Providence v. City of Evanston, 335 F.Supp. 396 (N.D.Ill.1971); Crow v. Brown, 332 F.Supp. 382 (N.D.Ga.1971), aff'd, 457 F.2d 788 (5th Cir. 1972) (per curiam).

pellants in any way in the foreseeable future. The prayer for relief also illustrates the lack of specificity. Appellants request neither zoning of any particular parcels nor approval of any specific projects.

In O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669 (1974), plaintiffs brought suit alleging that defendants, various judicial and law enforcement officials of Alexander County, Illinois, were administering the county's criminal justice system in a discriminatory manner so as to deprive all black and some white citizens of a variety of constitutional rights. The Supreme Court held that plaintiffs had failed to state an Article III case or controversy. 94 S.Ct. at 675. The Court's opinion noted that the complaint "allege[d] injury in only the most general terms" and that "[n]one of the named plaintiffs is identified as having himself suffered any injury in the manner specified." Id. at 676. The threat of injury to the named plaintiffs was too "abstract," "conjectural," and "hypothetical" to give them a "personal stake in the outcome." Id. at 675.

Here we have a similar case. Appellants alleged that appellees' zoning practices deprive low income minority groups of equal protection. However, none of the named plaintiffs has suffered from any of the specific, overt acts alleged. Thus appellants' personal connection with these practices is too abstract, conjectural, and hypothetical to establish an Article III case or controversy.

### C. *Metro-Act of Rochester, Inc.*

Appellant Metro-Act of Rochester, Inc., is a non-profit corporation whose main purpose is "to alert ordinary citizens to problems of social concern." Low income housing is one area to which the organization has directed its attention. Appellant claims standing on a number of grounds, none of which is adequate.

First, appellant claims standing because of its "special interest" in housing matters. The Supreme Court's decision in Sierra Club v. Morton, 405 U.S. 727, 735–740, 92 S.Ct. 1361 (1972), rejected this as a basis for standing.

Second, Metro-Act claims standing as a taxpayer of the city of Rochester. This approach fails for the same reasons stated above with respect to individual taxpayer appellants.

Third, appellant claims standing as representative of its low income members who seek housing in Penfield. Since we have decided that these individuals lack standing, the organization cannot derive standing from them.

Fourth, Metro-Act claims standing on the ground that one director of Penfield Better Homes is one of its members. We have decided that membership of Penfield Better Homes in Housing Council does not suffice to confer standing. (See discussion, infra.) It follows that membership of a director in Metro-Act certainly cannot confer standing.

Finally, relying on Trafficante v. Metropolitan Life Insurance Co., 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), Metro-Act claims standing as representative of its members who live in Penfield.[7] In *Trafficante* the plaintiffs, tenants of an apartment complex, challenged the allegedly discriminatory rental practices of their landlord. They claimed as injury the loss of social, business, and professional benefits of living in an integrated community and embarrassment of being stigmatized as living in a "white ghetto." They based their claim of standing on section 810(a) of the Civil Rights Act of 1968, 42 U.S.C. § 3610(a), which gives standing to "[a]ny person who claims to have been injured by a discriminatory housing practice . . . ." The Supreme Court held that plaintiffs had standing.

*Trafficante* is distinguishable from the present case. We have emphasized that generalizations about standing are largely useless. This is especially true of a case which focused on the peculiarities of one piece of legislation. The

7. Appellants' complaint did not include residents of the Town of Penfield as a class which they purported to represent. Metro-Act has, however, made this claim on appeal.

Court in *Trafficante* looked to the legislative history and administrative interpretation of section 810(a). 409 U.S. at 210, 93 S.Ct. 364. The Court also considered the practical difficulties of enforcing the Act and concluded that Congress must have intended persons in plaintiffs' position to be able to sue as private attorneys-general. Metro-Act has presented us with no similar factors in this case.

The concurring opinion of Justice White, joined by Justices Blackmun and Powell, further suggests that the holding of *Trafficante* should apply only to cases under the Civil Rights Act of 1968. Justice White expressed doubt that, in the absence of section 810(a), the suit would present an Article III case or controversy. 409 U.S. at 212, 93 S.Ct. 364. The six remaining justices explicitly declined to consider whether plaintiff might also have standing under 42 U.S.C. § 1982. 409 U.S. at 209 n. 8, 93 S.Ct. 364. The reasoning of the majority opinion and the explicit statement of the three concurring justices strongly indicate that a majority of the Court would not find standing for Metro-Act on this basis.

D. *Housing Council in the Monroe County Area, Inc.*

Housing Council in the Monroe County Area, Inc., is a non-profit corporation whose purpose is to "combat community deterioration through the elimination of racial and economic discrimination in housing." Its membership includes public and private agencies and organizations seeking to improve the housing of persons of low and moderate income. Plaintiffs below moved to add Housing Council as a party plaintiff. The district court held that Housing Council lacked standing. We agree.

Housing Council alleges no injury in fact to itself. To the extent that it bases standing on representation of various groups of residents in the metropolitan Rochester area, its claim fails for the same reasons given in our discussion of other appellants.

Housing Council also claims standing because Penfield Better Homes Corp., one of its members, has been denied approval of a specific housing project proposal. We note first that if this allegation conferred standing on appellant it would confer only that standing which its member would have had. Housing Council has not indicated that it limits its suit to the dispute over the proposal of Penfield Better Homes. Rather it joins in the more general and abstract claims of other appellants.

We think that Housing Council lacks standing to vindicate even the more limited claims which Penfield Better Homes might have against appellees. It is highly doubtful that an organization has standing to represent its members in most cases under the Civil Rights Act. See Aguayo v. Richardson, 473 F. 2d 1090, 1098–1101 (2d Cir. 1973), cert. denied 414 U.S. 1146, 94 S.Ct. 900, 39 L. Ed.2d 101 (1974). Certainly the special circumstances favoring organizational standing in cases like NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 458–460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), and NAACP v. Button, 371 U.S. 415, 428–429, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), are absent here. Alleged specific harm is limited to a single member. There is no reason why Penfield Better Homes cannot assert its own rights as well as or better than Housing Council.

Housing Council therefore lacks standing.

E. *Rochester Homebuilders Association, Inc.*

Rochester Homebuilders Association, Inc., is a nonprofit trade association of persons and companies engaged in various phases of the residential construction industry in the metropolitan Rochester area. In the court below the association moved, pursuant to Fed.R.Civ.P. 24(b) to intervene as plaintiffs in this action. The district court denied the motion on the grounds that the association lacked standing and that its intervention would create undue delay or prejudice. We agree that the associa-

tion lacked standing and do not reach the Rule 24(b) issue.

As we noted above, an organization may have standing to assert the rights of its members where there are special circumstances. The rule applies to trade associations as well as to other organizations. National Motor Freight Traffic Ass'n v. United States, 372 U.S. 246, 83 S.Ct. 688, 9 L.Ed.2d 709 (1963) (per curiam). We find no such special circumstances here.

Moreover, as we noted above with respect to appellant Housing Council, an organization seeking to assert rights of its members has only that standing which its members would have had. Rochester Homebuilders has not tied its claim of standing to specific acts of appellees which have affected its members. Instead it makes the same claims as other appellants. The members of the association would not have standing to raise these claims. The association cannot derive such standing from them.

Affirmed.