Laurence C. SMITH, Feroll Smith, Fred Spurlock, Theta Porter, W. A. Gott, G. D. Sevelin, Margaret Sevelin, Gladys Wasson, Plaintiffs,

v.

Thomas F. EAGLETON, Senator, John C. Danforth, Senator.

No. 78–3175–CV–S.

United States District Court, W. D. Missouri, S. D.

Aug. 15, 1978.

Laurence C. Smith, pro se.

Ronald S. Reed, Jr., U. S. Atty., Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER

COLLINSON, District Judge.

Plaintiffs, residents of southern Missouri, have filed a *pro se* civil lawsuit challenging defendants' actions during the ratification of the Panama Canal Treaties. The complaint alleges that passage of the Canal treaties violates plaintiffs' constitutional rights and amounts to larceny, fraud and conspiracy. The complaint also asserts that defendants have violated 42 U.S.C. § 1986. Plaintiffs seek damages for each count in the complaint, with the monies so collected to be paid into a "trust fund for building a sea level canal," and an injunction ordering defendants to cease further efforts to implement the treaties and set a referendum to determine whether the treaties shall be implemented.

Defendants have filed a motion to dismiss, asserting first that plaintiffs lack standing to bring this action. Second, defendants assert that they are immune from suit for their actions allegedly giving rise to this case.

 Turning first to the issue of immunity, defendants argue that they are immune from suit under the Speech and Debate Clause, Art. I, § 6, cl. 1, of the Constitution. This argument is clearly correct. As noted in *Doe v. McMillan,* 412 U.S. 306, 311–12, 93 S.Ct. 2018, 2024, 36 L.Ed.2d 912

To "prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary," *Gravel v. Unit-*

*ed States,* 408 U.S. 606, 617, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972), Art. I, § 6, cl. 1, of the Constitution provides that "for any Speech or Debate in either House, they [Members of Congress] shall not be questioned in any other Place."

The Speech or Debate Clause was designed to assure a co-equal branch of the government wide freedom of speech, debate and deliberation without intimidation or threats from the Executive Branch. It thus protects Members against prosecutions that directly impinge upon or threaten the legislative process. *Id.* at 616 [92 S.Ct. 2614]. The Speech or Debate Clause has been read "broadly to effectuate its purposes," . . . and includes within its protections anything "generally done in a session of the House by one of its members in relation to the business before it." . . . Thus "voting by Members and committee reports are protected" and "a Member's conduct at legislative committee hearings, although subject to judicial review in various circumstances, as is legislation itself, may not be made the basis for a civil or criminal judgment against a Member because that conduct is within the 'sphere of legitimate legislative activity.'" *Gravel v. United States, supra,* at 624 [92 S.Ct. 2614].

Once it is determined that members of Congress are acting within their legitimate sphere of activity, the Speech and Debate Clause affords "absolute" protection from outside challenge. *Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975). It is apparent that defendants' actions regarding the Panama Canal Treaties were within their legitimate duties as Senators of the United States. Accordingly, their activities may not be challenged in this suit.

▪ The Court shares defendants' concern as to whether President Carter is in fact a defendant in this case, for although

the style of the complaint does not name the President, he figures heavily in plaintiffs' grievances. Despite plaintiffs' evident dissatisfaction with the Panama Canal Treaties, it is well settled that this Court has no power to interfere with either their negotiation or implementation. *United States v. Curtiss-Wright Corp.,* 299 U.S. 304, 318–19, 57 S.Ct. 216, 220, 81 L.Ed. 255 (1936), states the principles to be applied:

[T]he investment of the federal government with the powers of external sovereignty did not depend on the affirmative grants of the Constitution. The powers to declare and wage war, to conclude peace, to make treaties, to maintain diplomatic relations with other sovereignties, if they had never been mentioned in the Constitution, would have vested in the federal government as necessary concomitants of nationality.

. . . . .

Not only, as we have shown, is the federal power over external affairs in origin and essential character different from that over internal affairs, but participation in the exercise of the power is significantly limited. In this vast external realm, with its important, complicated, delicate and manifold problems, the President alone has the power to speak or listen as a representative of the nation. He *makes* treaties with the advice and consent of the Senate; but he alone negotiates. Into the field of negotiation the Senate cannot intrude; and Congress itself is powerless to invade it.

In short, the power to negotiate treaties and to decide upon their terms is lodged exclusively with the President, subject only to the approval powers lodged in the Senate.[1] Once it is determined that the President has the power to perform an act relating to foreign policy, then the limit of judicial supervision has been reached. *Powell v. McCormick,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). In this case, President Carter had the exclusive power to

---

1. It is settled that the President may dispose of government property by treaty without first securing the approval of the entire Congress. *Edwards v. Carter,* —— U.S.App.D.C. ——, 580

F.2d 1055 (1978) (Panama Canal could be conveyed to Panama without prior approval of House of Representatives).

negotiate on behalf of the United States, and the authority to dispose of the Canal through the treaty power. *See* note 1 *infra.* Thus, he is not answerable to this or any other federal court for his decision to negotiate the Treaties. Further, this Court lacks the power to enjoin implementation of the Treaties. *Mississippi v. Johnson,* 71 U.S. (4 Wall.) 475, 18 L.Ed. 437 (1867) (federal courts lack jurisdiction prospectively to enjoin President from enforcing allegedly unconstitutional statutes). Thus, assuming that President Carter is in fact a defendant in this action, the portions of the complaint relating to his conduct must be dismissed.

■ Finally, the Court turns to defendants' argument that plaintiffs lack standing to sue in this action. Defendants assert that plaintiffs have not suffered "some threatened or actual injury resulting from the putatively illegal action . . . ." *Linda R. S. v. Richard D.,* 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973).

■ As noted in *Warth v. Sedlin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975), standing

is the threshold question in every federal case, determining the power of the court to entertain the suit. As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction . . . .

When the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction.

It is apparent from the complaint that plaintiffs' injury falls squarely in the category of a "generalized grievance." Though

their argument is phrased in terms of the legality of the Canal Treaties, it is apparent that plaintiffs' real attack is upon the wisdom of the Treaties and the political philosophy embodied in them. Resolution of such a dispute would, as defendants properly note, "distort the role of the Judiciary and its relationship to the Executive and Legislature and open the Judiciary to an arguable charge of providing 'government by injunction.'" *Schlesinger v. Reservists to Stop the War,* 418 U.S. 208, 222, 94 S.Ct. 2925, 2933, 41 L.Ed.2d 706 (1974).[2] Plaintiffs' remedy lies at the polls and not in this Court.

For the reasons stated above, it is

ORDERED that defendants' motion to dismiss should be and it is hereby granted. This action should be and it is hereby dismissed. Costs are taxed against the plaintiffs.

---

**2.** Defendants are also correct in their assertion that plaintiffs' allegations of "humiliation, mental anguish, trauma, economic damage, peonage, stress and strains through inconvenience, irritations, apprehension, and excessive and undue strains upon relationships with family, friends and associates" are insufficient to create standing. In a society of 215,000,000, it can fairly be said that every governmental action is irritating or inconvenient to some group of citizens. Subjective displeasure with governmental action, however, cannot be construed as an

"injury in fact", *Data Processing Service v. Camp,* 397 U.S. 150, 152, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), sufficient to create standing. Further, plaintiffs have alleged no direct relationship between their emotional state and the Panama Canal Treaties. Without such a link, there can be no standing. *Linda R. S. v. Richard D.,* 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973); *Massachusetts v. Mellon,* 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923).