Gary Vincent JOHNSON, Plaintiff,

v.

Joseph P. TEASDALE, Governor of Missouri, John Ashcroft, Missouri Attorney General, Philip M. Koppe, Assistant Attorney General, James F. Walsh, Director, Missouri Department of Social Services, Bill Duncan, Investigator, Missouri Department of Social Services, John Dahm, Director of Community Services for the State of Missouri, Honorable Richard H. Ralston, United States Magistrate, Donald W. Wyrick, Warden, Missouri State Penitentiary, Bill Armontrout, Associate Warden of Institutional Services, Calvin Beard, Associate Warden of Program Services, and Joseph Keene, Chief Mail Room Officer, Defendants.

No. 78–4150–CV–C.

United States District Court,
W. D. Missouri, C. D.

Sept. 19, 1978.

Gary V. Johnson, pro se.

Paul Robert Otto, Chief Counsel, Crim. Div., Asst. Atty. Gen., Jefferson City, Mo., for defendants.

## MEMORANDUM AND ORDER

ELMO B. HUNTER, District Judge.

Plaintiff, presently confined at the Missouri State Penitentiary, Jefferson City, has filed a *pro se* civil rights action against a large number of state officers and Magistrate Richard Ralston of this Court. Jurisdiction is alleged to lie under 28 U.S.C. § 1331 and 42 U.S.C. § 1983. Plaintiff also seeks to prosecute this case as a class action on behalf of "all . . . persons who are currently, or may be in the future, inmates of the Missouri Department of Corrections."

The complaint alleges

that the defendants have conspired, are conspiring and will conspire in Conspiracy to the United States Federal Court in order to have inmate complaints dismissed and denied by Magistrate Judge Richard H. Ralston. . . . the plaintiff charges that defendant Judge Richard H. Ralston conspires and allows other defendants to conspire in a conspiracy in his court against inmates who file civil actions against the Warden Donald W. Wyrick . . .; that at pretrial processing and hearings before Judge Ralston inmates are forced to consent judgments and off the record deals . . . their complaints are dismissed by recommendation to Honorable Judge Hunter that after consent judgments and deals are made in Judge Ralston's Court the inmates complaints are dismissed at which time the consent judgment and or deal becomes void and the inmates rights continue to be denied. that inmates are forced to pretrial hearings without an attorney while the Warden and other defendants have as many as 3 attorneys representing them . . . thus allowing the conspiracy to take place without the plaintiffs being able to represent themselves. The defendants conspire against the plaintiffs by denying them the right to prison records and informa-

tion much needed to represent a civil action in federal court, by denying them attorneys at pre-trial hearings, and by with-holding [sic] delaying and denying inmate legal mail to and from the prison as well as stoping [sic] mail which may interfere with his conspiracy. That the attorney general's office knowingly lies to the Court regarding matters relating to the conditions of confinement at the Missouri State Prison. . . .

The complaint also asserts that this conspiracy has denied prisoners their right to a jury trial.[1] As relief, plaintiff requests that the Court declare 28 U.S.C. § 636(b) unconstitutional to the extent that it denies plaintiff his right to a jury trial and other elements of due process; order that "all dismissed cases under section 1983 (be) reopened for processings dating back to the Special Order of the Court en banc effective December 22, 1976;" appoint counsel; and order a jury trial on all issues stated in the complaint.

Before turning to the legal issues presented by the complaint, it is necessary to discuss the procedures, order and statute attacked by plaintiff.

On December 22, 1976, this Court, sitting *en banc*, entered an order which provides in pertinent part:

[It is] hereby

ORDERED that all petitions for writs of habeas corpus or civil rights actions or any other civil action challenging conditions of confinement filed in the Central Division of this District be referred to the Honorable Richard H. Ralston, United States Magistrate . . . for the hearing and determination of all pretrial and prehearing matters under § 636(b)(1)(A), Title 28, United States Code . . ., and the taking of other action under § 636(b)(1)(B) of the same title and also Local Rule 26 of the United States District Court for the Western District of Missouri. It is further

ORDERED that the United States magistrate acting hereunder shall cause any order and any proposed findings of

fact and recommendation, or other action taken by him to be filed by the clerk and copies thereof distributed to the parties. Any party shall have a right to file written objections to any such proposed findings and recommendations or any other action taken by the magistrate within ten (10) days after being served with the proposed findings and recommendations or other action of the magistrate. Any matter which the magistrate has finally determined under the provisions of § 636(b)(1)(A), Title 28, United States Code . . ., shall be reviewable by a district judge to determine whether it is 'clearly erroneous' or contrary to law. In respect to any proposed action by the magistrate, the district judge shall make a *de novo* determination of any proposed finding of fact to which timely objection is filed by any party and may accept, reject, or modify, in whole or in part, the proposed findings and recommendations and other action of the magistrate.

In addition to this order, plaintiff attacks 28 U.S.C. § 636(b)(1):

Notwithstanding any provision of law to the contrary—

(A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

(B) a judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of

---

1. Plaintiff requests no relief regarding the alleged interference with prisoner legal mail.

fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

(C) the magistrate shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties. Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

The pretrial conference procedure challenged by plaintiff was developed as an answer to unique problems presented by many *pro se* prisoner civil rights cases. *See generally* Federal Judicial Center, *Recommended Procedures for Handling Prisoner Civil Rights Cases in the Federal Courts,* Tentative Draft No. 2 (1977) (hereinafter Aldisert Report). The procedure has three purposes: First, it enables the Court to resolve any discovery problems that may have arisen during processing of a case. Second, the pretrial conference enables the Court to clarify crucial points in a complaint or determine the true nature of a prisoner's grievance through informal discussion. In many *pro se* prisoner actions, the factual allegations, legal claims, and requests for relief are not clear from the prisoner's written pleadings. Many prisoners submit complaints without any substantial factual allegations but seeking declaratory and injunctive relief, or a substantial damage award, when in reality they seek administrative aid concerning some problem. Typical cases in this class include

requests for medical treatment or release from a segregation unit. A pretrial conference permits the court to inquire into the true problem underlying many prisoner complaints. Third, the pretrial conference allows the Court to resolve a substantial number of prisoner actions without a trial. A significant number of prisoner complaints are mooted after the complaint is filed. The pretrial conference discloses these actions and speeds their dismissal. Further, as noted previously, many prisoner complaints spring from a grievance or problem that can be resolved satisfactorily through administrative action by prison officials. The presiding judge or magistrate seeks to resolve such problems by acting as an informal arbitrator between prison officials and the complaining prisoner. This "grievance arbitration" provides the prisoner with the relief he actually seeks and ultimately results in dismissal of his action without prejudice.

The complaining prisoner and a supervisory official of the Missouri State Penitentiary, ordinarily Warden Wyrick, are present at the pretrial conference. An Assistant Attorney General, who represents the prison officials named as defendants, and counsel for the prisoner, if any, also attend. Magistrate Ralston of the Court presides. As a general rule, informal discussions during the conference are not recorded. Formal settlement agreements, admissions by a party, discovery orders, and similar portions of the conference are recorded on tapes, however, for future transcription are needed. If necessary or appropriate, an entire conference may be recorded. Pursuant to the Court *en banc* order described above, the Magistrate's action or report and recommendations are submitted to the parties, who have ten days in which to file written objections. The Court may then accept, reject or modify the Magistrate's action. The Court's final order closing the case is appealable.

This procedure forms the background for plaintiff's vague and conclusory allegations of a conspiracy against Missouri prisoners who wish to challenge the conditions of

their confinement. Even when it is given the benefit of every possible doubt, *see Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1973), plaintiff's complaint is completely lacking in factual allegations that would support his conspiracy claim or permit the Court to infer that defendants acted in concert to violate the rights of any Missouri prisoner. For the reasons stated below, the dearth of factual allegations in the complaint forces the Court to dismiss this action.

■ Initially, it is established beyond cavil in this Circuit that broad and conclusory statements unsupported by factual allegations are insufficient to support a cause of action under 42 U.S.C. § 1983. *See, e. g., Ervin v. Ciccone*, 557 F.2d 1260 (8th Cir. 1977); *Nickens v. White*, 536 F.2d 802 (8th Cir. 1976); *Gilbert v. Corcoran*, 530 F.2d 820 (8th Cir. 1976); *Windsor v. Bethesda General Hospital*, 523 F.2d 891 (8th Cir. 1975); *Means v. Wilson*, 522 F.2d 833 (8th Cir. 1975); *Forester v. California Adult Authority*, 510 F.2d 58 (8th Cir. 1975); *Ellingburg v. King*, 490 F.2d 1270 (8th Cir. 1974). *Means v. Wilson, supra*, at 840, amplifies this general principle:

> Under Fed.R.Civ.P. 8, technical niceties of pleading are not required. Rather a short and plain summary of the *facts* sufficient to give fair notice of the claim asserted is sufficient. . . . At a minimum, the complaint must state some way in which the named defendants participated in the alleged conspiracy to take away the . . . rights of the plaintiffs.

A cursory reading of the complaint in this action reveals *no* factual allegations that would show or enable the Court to infer how *any* of the named defendants participated in the conspiracy alleged by the plaintiff. Without such allegations, if in fact there are any that would support such a claim, plaintiff's complaint must be dismissed.

Plaintiff's complaint must be dismissed in its entirety for a second, independent reason: it is wholly lacking in factual allegations from which it can be established that plaintiff has standing to bring this action.

■ The principle of standing was discussed in detail in *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975):

> In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise. . . . In both dimensions it is founded in concern about the proper—and properly limited—role of the courts in a democratic society.
>
> . . .
>
> In its constitutional dimension, standing imports justiciability: whether a plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III. This is the threshold question in every federal case, determining the power of the court to entertain the suit. As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663, 703 (1962). The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action . . . .' *S. v. D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973). *See Data Processing Service v. Camp*, 397 U.S. 150, 151–154, 90 S.Ct. 827, 829–830, 25 L.Ed.2d 184 (1970).
>
> . . . [E]ven when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, this Court has held that the plaintiff generally must assert his own legal rights and interests,

and cannot rest his claim to relief on the legal rights or interests of third parties. *E. g., Tileston v. Ullman*, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943). *See United States v. Raines*, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960); *Barrows v. Jackson*, [346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953)].

(Footnotes omitted.) *Accord, Smith v. Eagleton*, 455 F.Supp. 403 (W.D.Mo.1978). Standing does not depend on the merits of plaintiff's claim that particular conduct is illegal. *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Flast v. Cohen*, 392 U.S. 83, 90, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Instead, a determination that standing exists turns on the material allegations in the complaint itself. *Warth v. Seldin, supra* 422 U.S. at 501–02, 95 S.Ct. 2197.

 There is nothing whatsoever in the complaint that will support a claim that plaintiff has standing to bring this action. He alleges no personal injury as a result of the putative conspiracy. The complaint is wholly devoid of allegations showing that plaintiff asserts his own legal rights or that he has a personal stake in the outcome of this case. In fact, the complaint contains little more than a generalized recitation that a conspiracy allegedly exists, without any claim that it has actually infringed the rights of *any* Missouri prisoner, including plaintiff. On this basis the Court can only conclude that plaintiff lacks standing to bring this action in its present form. It may be dismissed on that basis.[2]

 This action may also be dismissed on a third ground: assuming *arguendo* that he has standing and that the allegations in his complaint are sufficient, plaintiff and all others he seeks to include in his class have several adequate remedies available at

law. It is well settled that a plaintiff seeking equitable relief under the Civil Rights Act must demonstrate that he lacks an adequate remedy at law and that he will suffer irreparable injury if the injunction is not entered. *Allee v. Medrano*, 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974); *Bonner v. Circuit Court of City of St. Louis, Missouri*, 526 F.2d 1331 (8th Cir. 1975). Similar rules apply with respect to declaratory relief. *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). Thus, under settled principles, he is not entitled to equitable relief.

Prisoners aggrieved by the pretrial conference system in this district or by the failure to enforce a settlement agreement have numerous available avenues of relief at law. If a prisoner is aggrieved by some finding of the Magistrate, he may file written exceptions to the Magistrate's report and recommendation. Impropriety at any point during the development of the case may also be challenged on appeal, either after the case reaches conclusion in this Court, or, in certain circumstances, during its processing. If plaintiff's allegations are construed as a claim that judicial officers of this Court do not properly process prisoner civil rights actions, plaintiff has an adequate remedy through mandamus in the Court of Appeals. Plaintiff may also challenge the failure to appoint counsel through an extraordinary writ in the Court of Appeals, *Shields v. Jackson*, 570 F.2d 284 (8th Cir. 1978), appeal from the order denying counsel under certain circumstances, *Peterson v. Nadler*, 452 F.2d 754 (8th Cir. 1971), or from the final judgment of dismissal, *Souder v. McGuire*, 516 F.2d 820 (3d Cir. 1975). Plaintiff's claim of coercion at pretrial conferences can be remedied by a mo-

---

2. Plaintiff's lack of standing to press his individual claims dooms his attempt to prosecute this case as a class action. An individual purporting to represent a class must himself have standing before he can seek relief on behalf of the class he seeks to represent. *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495 (7th Cir. 1972); *Jackson v. Sargent*, 394 F.Supp. 162 (D.Mass. 1975); *Baird v. Lynch*, 390 F.Supp. 740 (E.D. Wis.1974); *Jones v. United Gas Improvement*

*Corp.*, 383 F.Supp. 420 (W.D.Pa.1974); *Gordon v. Fundamental Investors, Inc.*, 362 F.Supp. 41 (S.D.N.Y.1974); *Husbands v. Commonwealth of Pennsylvania*, 359 F.Supp. 295 (M.D.Pa. 1973); *Chevalier v. Baird Savings Ass'n*, 66 F.R.D. 105 (E.D.Pa.1975). A plaintiff may not use a class action suit as a "bootstrap" device to create the standing he lacks under the substantive law. *Weiner v. Bank of King of Prussia*, 358 F.Supp. 684 (E.D.Pa.1973).

tion to vacate the order of dismissal or by a second action raising similar substantive complaints. Finally, plaintiff's claim that Missouri defendants do not enforce settlement agreements can be remedied by filing a motion to reopen the original action for the purpose of enforcing the settlement agreement or through a new action based upon the terms of the agreement.

In short, plaintiff has numerous remedies available at law for the redress of any injury he may have suffered. Under these circumstances, it would be improper for the Court to permit plaintiff to seek equitable relief instead of pursuing these easily available remedies. This action may be dismissed on that basis.

■ In addition to these grounds for dismissal, it must be noted that certain claims raised in this action do not entitle plaintiff to relief. First, plaintiff argues that prisoners appearing in a pretrial conference in this Court are entitled to the appointment of counsel. Such is not the case. There is no absolute right to appointment of counsel in civil cases, and the District Court has broad discretion in considering a motion for appointment of counsel under 28 U.S.C. § 1915. *Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *Peterson v. Nadler*, 452 F.2d 754 (8th Cir. 1971); *Bethea v. Crouse*, 417 F.2d 504 (10th Cir. 1969).

■ Second, plaintiff argues that the pretrial procedures used in this district deprive an inmate of his right to a jury trial. In addressing this point, it must first be understood that there is no absolute right to a jury trial in civil cases. While the Seventh Amendment preserves the right to a jury trial "[i]n Suits at common law,

where the value in controversy shall exceed twenty dollars," there is no right to a jury trial in suits involving only equitable rights and remedies. *Parsons v. Beford*, 28 U.S. (3 Pet.) 432, 7 L.Ed. 732 (1830); *Hyde Properties v. McCoy*, 507 F.2d 301 (6th Cir. 1974); *Farmers-Peoples Bank v. United States*, 477 F.2d 752 (6th Cir. 1973); *National Life Insurance Co. v. Silverman*, 147 U.S.App.D.C. 56, 454 F.2d 899 (1971); *Kerr-McGee Corp. v. Bokum Corp.*, 453 F.2d 1067 (10th Cir. 1972). Thus, an inmate who raises solely equitable claims against prison officials has no Constitutional right to a jury trial. In these cases, plaintiff's claim that a pretrial conference denies the right to a jury trial is wholly fallacious. No such right exists.

There is nothing in the Constitution, statutes or rules that prevents any plaintiff from voluntarily settling or dismissing his case. An inmate who accepts a settlement offer by prison officials has no need of a jury trial; he has already received satisfactory relief without the delay or burden that might be imposed by waiting for a full jury trial. An inmate who chooses to reject a settlement offer may proceed to trial before a jury, if he has requested one and the law permits.[3]

■ Plaintiff also challenges the requirement that prisoners use the Court's standard civil rights complaint forms when they file their cases. The use of form complaints in prisoner actions, both civil rights and habeas corpus, has been encouraged by groups studying the peculiar problems presented by prisoner litigation, *see* Aldisert Report at 82–83, other courts facing similarly large prisoner case loads, *Carter v. Telectron, Inc.*, 452 F.Supp. 944 (S.D.Tex.

---

**3.** Obviously, persons who have a right to a jury trial may choose instead to present their claims solely to a judge.

In passing, the Court is compelled to note that much of plaintiff's complaint is based on the mistaken assumption that all allegedly erroneous or illegal acts of prison officials may be challenged in a civil rights action. This, of course, is not the case. Many prisoner complaints are only cognizable in habeas corpus. *See, e. g., Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (revocation of good time); *Meeks v. Vermillion*, 444 F.Supp.

197 (W.D.Mo.1978) (denial of parole). Others do not present issues cognizable under § 1983. *See, e. g., Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (negligent denial of medical care not cognizable). A significant number of prisoner claims are dismissed as frivolous or malicious. *See, e. g., Boston v. Stanton*, 450 F.Supp. 1049 (W.D.Mo.1978). It is apparent that these cases are not dismissed because of the actions of a sinister conspiracy, but because they are legally deficient in some fashion.

1977), and expressly approved by the Congress. Rule 2(c), *Rules Governing Section 2254 Cases in the United States District Courts*; Rule 2(b), *Rules Governing Section 2255 Proceedings for the United States District Courts.* The form complaints serve a number of recognized purposes. They ensure that all prisoner plaintiffs provide the Court with a certain minimum quantity of information necessary to the processing of the case. The forms guide prisoners who wish to present grievances but are unfamiliar with the methods for filing a lawsuit. Certain information in the forms helps prevent malicious, abusive or duplicitive litigation. *See, e. g., Monteer v. United States,* F.Supp. (W.D.Mo.1978); *Carter v. Telectron, Inc., supra.* Such "[p]rocedural instruments are means for achieving the rational ends of the law." *Adams v. United States ex rel. McCann,* 317 U.S. 269, 273, 63 S.Ct. 236, 239, 87 L.Ed. 268 (1942).

In the Central Division of this Court, a prisoner may commence a civil rights action in two ways. First, he may write the Court and request the appropriate forms. These requests are directed to the Clerk, who promptly supplies the needed documents. When the inmate completes the forms, he returns them to the Clerk's Office, which then begins the processing of the case. Second, an inmate may file his complaint without using forms. When this occurs, processing of the case begins, and the inmate is directed to complete a set of the Court's standard form complaints within a specified period. The completed form complaints become part of the case file upon their return by the prisoner. Unlike many other districts, the Court permits prisoner plaintiffs to submit an unlimited amount of supplemental material, including briefs, addenda, exhibits, factual statements and affidavits, with a complaint. These documents also become part of the case file and are considered by the Court during processing of a case.

The required use of standard complaint forms in this district is designed to ensure the orderly administration of justice in prisoner civil rights cases. It is well settled under the Civil Rules that plaintiffs may be required to submit certain minimum amounts of information as a prerequisite to filing a case in federal court. *See* Rules 8–11, *Fed.R.Civ.P.* The Court's standard prisoner civil rights complaint forms require less of prisoners than would otherwise be mandated by the Civil Rules. They are not unconstitutional.

To summarize, plaintiff's conclusory allegations neither state a cognizable cause of action under the Civil Rights Act nor suffice to confer standing to sue. Plaintiff is not entitled to equitable relief because he has numerous available remedies at law. As indicated more fully elsewhere in this opinion, many of the claims raised in the complaint do not entitle plaintiff to relief. Finally, plaintiff's lack of standing requires the Court to hold that he may not maintain this suit as a class action. For these reasons, this action must be dismissed.

For the reasons stated above, it is

ORDERED that this action, provisionally filed pursuant to the standard practice of the Court, should be and it is hereby dismissed.